No. 04-98-00687-CR



Porfirio MENDOZA, Jr.,


Appellant



v.



The STATE of Texas,


Appellee



From the 365th Judicial District Court, Maverick County, Texas


Trial Court No. 97-06-04784-CR


Honorable Amado Abascal, III, Judge Presiding



Opinion by: Tom Rickhoff, Justice


Sitting: Tom Rickhoff, Justice

 Sarah B. Duncan, Justice

 Karen Angelini, Justice


Delivered and Filed: June 23, 1999


AFFIRMED


 Porfirio Mendoza was convicted of capital murder and sentenced to life imprisonment. On
appeal, he challenges the legal and factual sufficiency of the evidence. He also argues that the trial
court committed reversible error by failing to conduct an adequate inquiry to determine whether a
juror was so sick that she could not continue her duties as a juror. We affirm.


Sufficiency of the Evidence


 In analyzing the legal sufficiency of the evidence, we must view the evidence in the light
most favorable to the verdict to determine whether a rational jury could have found beyond a
reasonable doubt all the essential elements of the offense charged. See Jackson v. Virginia, 443 U.S.
307, 319 (1979); Barnes v. State, 876 S.W.2d 316, 321 (Tex. Crim. App. 1994). In analyzing the
factual sufficiency of the evidence, we must view all the evidence as a whole, without viewing it in
the light most favorable to either party. See Cain v. State, 958 S.W.2d 404, 407-08 (Tex. Crim. App.
1997); Clewis v. State, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996). We may set aside a verdict
for factual insufficiency "only if it is so contrary to the overwhelming weight of the evidence as to
be clearly wrong and unjust." Clewis, 922 S.W.2d at 129. We are not free to reweigh the evidence
or to determine the credibility of the witnesses. See Cain, 958 S.W.2d at 407-09; Clewis, 922
S.W.2d at 135; Muniz v. State, 851 S.W.2d 238, 246 (Tex. Crim. App. 1993).

 Mendoza was indicted and convicted of intentionally and knowingly killing Rolando
Gonzalez and Rodolfo De La Cerda by shooting them with a firearm during the same criminal
transaction. See Tex. Penal Code Ann. § 19.03(a)(7)(A) (Vernon 1994). He argues that the
evidence was legally insufficient to establish that he personally shot anyone, since no one testified
to having seen him fire a shot, there was no evidence that he had a motive to shoot anyone, his
fingerprints were not found on the gun, and no gunshot residue was found on his clothing or person.

 Eyewitnesses testified that the shots were fired from the passenger side of a car that Cruz
Hernandez had been driving earlier that evening. Hernandez testified that while he was driving and
Mendoza was in the passenger seat, he heard shots and Mendoza told him he had "shot in the air."
Witnesses testified that Mendoza had a gun earlier in the evening. One of these witnesses also
claimed that Mendoza said, "[I]f your friends want to start something, well, I have something to put
an end to it, you know, to stop them." Other witnesses testified that he took credit for the shooting
later that night by stating either that "he" or "they" engaged in a drive-by shooting. The gun used
in the shooting was recovered in the backyard of Mendoza's house the next morning. This evidence
is legally sufficient to support Mendoza's conviction.

 Mendoza also argues that the evidence was factually insufficient. We recognize that
Hernandez testified as part of a deal between him and the State and that there were inconsistencies
between the trial testimony of some of the State's witnesses and the statements they had given the
police. We also recognize that the defense presented evidence in an attempt to establish that
Hernandez was the sole culprit of the murders. The jury, however, apparently believed the State's
witnesses and rejected Mendoza's theory of the case. We cannot review these credibility and weight-of-the-evidence determinations. Having examined the entire record, we do not believe the verdict
is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. We
therefore reject Mendoza's argument that the evidence was factually insufficient.

Inquiry Regarding Juror's Ability to Continue Her Duties


 The Code of Criminal Procedure provides, "After the charge of the court is read to the jury,
if any one of them becomes so sick as to prevent the continuance of his duty ... the jury shall be
discharged" unless the parties agree to proceed with eleven jurors. Tex. Code Crim. Proc. Ann.
art. 36.29(c) (Vernon Supp. 1999) (emphasis added). Mendoza argues that the court failed to
conduct an adequate inquiry to determine whether a juror was "so sick as to prevent the continuance
of [her] duty."

 During their deliberations, the jurors sent out several notes indicating that they were having
difficulty reaching agreement. After they had been deliberating for over eight and a half hours, they
sent the following note: "Juror, Olga Leticia Herrera is feeling sick due to her pregnancy, due also
to lack of rest." The court called the jury into the courtroom and asked the foreperson, "Has Mrs.
Herrera indicated to you that she is unable to continue this evening?" The foreperson responded,
"Yes, sir." The court then asked, "Do you think that if the jury were to be retired that you could
continue with your deliberations first thing in the morning?" The foreperson again responded
affirmatively. Defense counsel suggested out of the jury's presence that the court should ask Juror
Herrera whether she was so sick that she could not continue her duties. The court declined to take
this step. The jury reconvened the following morning and returned a verdict of guilty of capital
murder at 2:23 that afternoon. The defense asked that the jury be polled. All the jurors, including
Herrera, responded affirmatively when asked, "[I]s this your verdict?"

 In his motion for new trial, Mendoza argued that Herrera was so sick that she was prevented
from continuing her duties as a juror. Attached to the motion for new trial was an affidavit by
Herrera, which stated in pertinent part:

 During this [sic] deliberations I was pregnant. I was under Dr. Hernandez' care, he
told me not sit or stand too long [sic]. I had to walk some, otherwise I would hurt a
lot. One of these days I was in such pain that I sent the Judge a note telling him the
pain was unbearable, he sent the panel home (Motel) for the nite [sic]. During the
deliberations I had to lay on a couch because of the pain. When I was laying down
the jurors would discuss anyway. I had to leave the room frequently to go to the
Restroom, while I was out I do not know what went on inside, the Bailiff would
escort me to the bathroom [sic].


At a hearing on the motion for new trial, the affidavit was admitted into evidence and the bailiff
testified that there were numerous occasions when Herrera was out of the jury room while the rest
of the jury was in the jury room. The court denied the motion for new trial.

 On appeal, Mendoza asserts that the trial judge abused his discretion by relying on the
foreperson's statements instead of questioning Herrera to determine whether she was so sick as to
prevent the continuation of her duties. We need not decide whether the judge should have
questioned Herrera because it is apparent from the record that Mendoza was not harmed by the
court's failure to conduct this inquiry. See Tex. R. App. P. 44.2(b).

 First, as the State argues, Herrera in fact continued with her duties. The jury reconvened the
following morning and deliberated until 2:23 p.m. without any further indication that Herrera was
having difficulty. Although Mendoza argues that it is impossible to determine from the record
whether Herrera was too sick to continue her duties, the case he cites for that proposition is
inapposite. See Valdez v. State, 952 S.W.2d 622 (Tex. App.--Houston [14th Dist.] 1997, pet. ref'd).
In Valdez, the court held that there "is no presumption from a silent record that [a] juror was properly
excused." Id. at 624. In this case, the record is not silent: Herrera asserted that the verdict was her
verdict when the jury was polled.

 Second, the hearing on the motion for new trial eliminated any harm in the court's failure to
question Herrera during the deliberations. The defense was able to secure an affidavit from Herrera,
and the court was able to consider the affidavit, as well as the bailiff's testimony. Neither the
affidavit nor the testimony indicated that Herrera was so sick that she could not or did not continue
her duties as a juror.


 The judgment of the trial court is affirmed.


 Tom Rickhoff, Justice

DO NOT PUBLISH